218355



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

U S. DISTRICT COURT
NORTHERN DISTRICT OF **TEXAS**
FILED

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | |
|---|---|
| GW EQUITY LLC, GWBS, INC. AND GREAT WESTERN BUSINESS SERVICES, LLC, § § § | |
| **PLAINTIFFS,** § § | |
| **V.** § § § | **CAUSE NO. _____** |
| PBS GLOBAL, INC. F/K/A PRUDENTIAL BUSINESS SERVICES INC., JOHN PERSAUD, RICHARD MEIER, LAHNY McCRAY DALE GRANGER, JOSEPH C. KISER, WAYNE LEE, WILLIAM JACOBS, AND FRED RODDA, § § § § § § § § | **3-05CV0.800-R** |
| **DEFENDANTS.** § § | |

## PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF, INCLUDING A TEMPORARY RESTRAINING ORDER

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Great Western Business Services, LLC , GW Equity LLC ("GWE") and GWBS, Inc. (collectively "GWBS") file this Plaintiffs' Verified Original Complaint and Application for Injunctive Relief against Defendants PBS Global, Inc. ("PBS"), John Persaud ("Persaud"), Richard Meier ("Meier"), Lahny McCray ("McCray"), Dale Granger ("Granger"), Joseph C. Kiser ("Kiser"), Wayne Lee ("Lee"), William Jacobs ("Jacobs"), and Fred Rodda ("Rodda"), (collectively referred to as "Defendants") on personal knowledge with respect to itself and its own acts, and on information and belief as to all other matters,

and would respectfully show the Court as follows:

## I.
## THE PARTIES

1.  Plaintiff GW Equity LLC is duly incorporated in the State of Texas with its principal place of business being in Dallas, County, Texas.

2.  Plaintiff Great Western Business Services, LLC is duly incorporated in the State of Delaware with its principal place of business being in Dallas County, Texas.

3.  Plaintiff GWBS, Inc. is duly incorporated in the State of Texas with its principal place of business being in Dallas, County, Texas.

4.  Defendant Richard Meier is an individual resident and citizen of Greensboro, North Carolina.  Upon information and belief, he may be served at 4510 Lake Jeanette Rd., Greensboro, North Carolina 24755.

5.  Defendant Lahny McCray is an individual resident and citizen of Applegate, Oregon. Upon information and belief, she may be served at 887 Ox Yoke Road, Grants Pass, Oregon 97526-9729.

6.  Defendant Dale Granger is an individual resident and citizen of Glen Falls, New York. Upon information and belief, he may be served at 43 W. Notre Dame St., Glen Falls, New York 12801.

7.  Defendant Joseph C. Kiser is an individual resident and citizen of Floyd, Virginia. Upon information and belief, he may be served at 3095 Webbs Mill Rd. North, Floyd, Virginia 24091.

8.  Defendant Wayne Lee is an individual resident and citizen of the State of Arkansas and maintains a mailing address of 6900 Incas Drive, Little Rock, AR 72116.  Upon information and belief, he may be served with process at that location.

9. Defendant William Jacobs is an individual resident and citizen of the State of North Carolina and maintains a mailing address of 4204 Glen Erin Way, Raleigh, North Carolina 27613. Upon information and belief, he may be served with process at that location.

10. Defendant Fred Rodda is an individual resident and citizen of the State of Montana and maintains a mailing address of 1302 24th St., West, Suite #310, Billings, Montana 59102.

11. Defendant John Persaud is an individual resident and citizen of the State of Florida and maintains a mailing address of 5025 High Point Dr., Pensacola, Florida 32505.

12. Defendant PBS Global, Inc. is a corporation that is incorporated under the laws of the State of Florida. It has its principal place of business in the State of Florida. Defendant does not have a registered agent for service of process in the State of Texas. Service of process may be made according to the laws of the state of Texas by serving the Florida Secretary of State at Secretary of State, Florida Department of State, R. A. Gray Building, 500 S. Bronough, Tallahassee, FL 32399-0250.

## II.

## JURISDICTION AND VENUE

13. The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332 because the Plaintiffs and the Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

14. The Court has jurisdiction over the lawsuit because the action arises under 18 U.S.C. § 1962 et seq.

15. The Court has supplemental jurisdiction over Plaintiff's breach of contract, tortiuous

interference, breach of fiduciary duty, misappropriation, Texas Theft Liability Act and unfair competition claims under 28 U.S.C. § 1367 because the claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

16. The parties have agreed to venue being in Dallas County, Texas in the written and executed agreements signed by all Defendants, a sample copy of one which is attached hereto and as Exhibit "1" and is incorporated herein as if by reference which states "IC irrevocably consents to the jurisdiction and to the service of process, pleadings, and notices in connection with any and all actions and processes initiated in a State or Federal court located in the City of Dallas, Dallas county, Northern District of Texas, State of Texas, United States of America."

## III.

## PRELIMINARY STATEMENT

17. Plaintiff is the owner of certain property rights threatened with irreparable injury by the conduct of Defendants. In particular, GWBS is a Dallas-based company that has been engaged in the practice of marketing and business analysis since the mid-1980s. During that time GWBS has built up an extensive and confidential customer list, acquired unique skills, developed unique training materials and special knowledge of sales methods and the needs of its customers. GWBS has furthermore developed goodwill in the business community and is considered a leader in the field. Each of the Individual Defendants was hired by GWBS as an independent contractor and trained to solicit and sell GWBS's services of advertising businesses that are either for sale or are seeking to raise capital to its customers. Ancillary to the respective independent contractor agreements between

Individual Defendants and GWBS, each entered into a confidential/non-competition agreement in order to protect the confidential and proprietary property of GWBS. In violation of their respective non-competition and non-disclosure agreements, Persaud, Meier, McCray, Granger, Kiser, Lee, Jacobs, and Rodda left the employ of GWBS and began competing directly against it. Their plan is, was and continues to be to use the proprietary and confidential material and information acquired while in the employ of GWBS and use it to solicit GWBS clients for their new employer, Defendant PBS, a direct competitor of GWBS. The problem: the non-competition and non-disclosure agreement executed by Defendants with GWBS strictly prohibits this activity. GWBS brings this action to seek immediate injunctive relief and to recover its damages for Defendants' wrongful acts.

## IV.
## THE FACTS GIVING RISE TO THIS ACTION

### A. GWBS Sets The Standard In The Market.

18. GWBS is a Dallas-based company that has been engaged in the practice of marketing and business analysis since the mid-1980's. GWBS prides itself on its reputation in the industry and its proven track record of providing quality services and having satisfied customers. In its simplest form, GWBS provides unique and specialized marketing opportunities designed to unite its clients (sellers of businesses) with potential purchasers.

19. Among other things, GWBS evaluates its client's businesses, evaluates prospective purchasers, and engages in national and international advertising. GWBS does all of these things through its national sales force of independent contractors and its support staff in Dallas, Texas.

20. In furtherance of its business, and as consideration supporting the respective non-compete agreements, GWBS provides its independent contractors with specialized proprietary and confidential information, including, but not limited to, training, marketing, sales and operations handbooks, manuals, guidelines, forms, checklists, videotapes, and sales leads.

**B.      GWBS Always Protects Its Confidential and Proprietary Information.**

21. GWBS goes to great measures to protect its confidential and proprietary information.   Indeed, each of its independent contractors is required to sign a non-competition and non-disclosure agreement upon their employment with GWBS.   The reason is straightforward -- the independent contractors are provided with GWBS' confidential and proprietary roadmap and business leads.  This information is the key by which the independent contractors decide which businesses to solicit and how to pitch and sell GWBS' services.

22. If a competitor were able to gain access to GWBS' business leads and confidential information, they would essentially have GWBS' playbook.  With this playbook competitors could unfairly compete directly against GWBS and would be able to, at a minimum, (1) forecast GWBS' business moves, (2) know GWBS' target customers, (3) know GWBS' sales strategies and techniques, and (4) undercut GWBS' market share in this industry.

**C.      GWBS Hires Defendants and Discloses To Them Its Confidential and Proprietary Information.**

23. Each individual Defendant named herein was hired as an Independent Contractor by GWBS.  Just like every other independent contractor, these Defendants went through an extensive training program—developed over the twenty-plus years it has been in business—in Dallas, Texas and executed a written non-competition and non-disclosure

agreement ("Agreement") with GWBS at that time.[1]

24. These Agreements contain specific provisions stating that Defendants would not use or disclose confidential or proprietary information gained through their business relationships with GWBS.[2]  Additionally, and in order to ensure the sanctity of such information, each Defendant named herein agreed not to solicit, contact any lead, client or former client of GWBS for the purpose of and with the intent to sell  products for a period of two years within the defined area.[3]   Indeed, all Defendants expressly agreed that their violation of this Agreement would subject them to "immediate legal action, including but not limited to suit for temporary restraining order, temporary injunction, permanent injunction, damages, attorneys' fees and any and all of the rights and remedies to which GWBS may be entitled."[4]

### D.   Defendants Take GWBS' Proprietary and Confidential Information and Start to Compete Directly Against GWBS.

25. Each Defendant named herein eventually left GWBS.  With GWBS' confidential leads and other proprietary information in hand, the Defendants, at one time or another, went to work for Prudential Business Services, or PBS, a direct competitor of GWBS.

26. Since becoming employed by PBS, Defendants have been soliciting clients for their new employer by using GWBS' proprietary and confidential information and materials.

---

1 See sample of GWBS LLC Independent Contractor Agreement entered into by all named Defendants ("Agreement"), a true and correct copy of which is attached hereto as Exhibit "1" and is incorporated herein by reference.
2 See Agreement at pg. 3-4 ("IC specifically agrees, as a covenant separate and apart from any other covenant or promise contained herein and supported by separate consideration as provided herein, that IC...shall not disclose any of the aforesaid confidential information or trade secrets {including customer lists, sales information, sales presentations, training materials, formulas, patterns, devices, processes, records, specifications, and Leads}, either directly or indirectly, nor will it use them in any way,...except as required in the course of performing Services under the Agreement.").
3 Id. at pg. 2 & 4.
4 Id. at p. 4.

GWBS files this action to protect its operations, protect its proprietary and confidential information, protect its customer goodwill, prohibit Defendants from soliciting away its clients, and to enforce the non-competition and non-disclosure agreement which is ancillary to the agreement entered into between GWBS and each Defendant.

27. Defendants caused PBS to engage in a scheme, artifice and device intended to defraud Plaintiffs and steal their customers and confidential information by among other things, misappropriating Plaintiff's training materials, sales leads and presentations. These systematic acts were accomplished in part through the use of the United States Mail and interstate and international wires.

## E.    Defendants' continue their efforts to misappropriate Plaintiffs' confidential information.

28. This is a recurring problem.  Plaintiffs have already had to enforce non-compete agreements against other individuals who went to work for PBS and solicited Plaintiffs' customers etc, in violation of their respective non-competes.

29. In April 2004, the District Court for the 192nd Judicial District, Dallas County, entered a TRO restraining Wayne Partee, William Allen and Brian Hart from competing with Plaintiffs in violation of their non-compete agreements.

30. In October of 2004, the 192nd Judicial District, Dallas County, entered an Agreed Judgment granting a permanent injunction restraining Wayne Partee, William Allen and Brian Hart from disclosing or utilizing Plaintiffs' proprietary and confidential information and soliciting Plaintiffs' customers for a period of eighteen (18) months.

31. Despite such agreements, PBS and the Individual Defendants, at the direction of Persuad, continue their efforts and actions of disclosing, utilizing and outright theft of Plaintiffs' proprietary and confidential information.

32. In particular, GWE provides educational seminars on how and when to sell a business for the most profit.  GWE scheduled a seminar for March 15, 2005 at the Wyndham Greenspoint Hotel.   Prior to the seminar GWE shipped confidential and proprietary information and materials to the hotel/conference site in closed, taped and sealed boxes, and addressed to the attention of GWE agents known to be employed by GWE and attending the seminar. The materials shipped were the result of efforts made by GWE over the course of 14 months and cost GWE several hundred thousand dollars in research and development of the materials.

33. On or about March 14, 2004, Defendants John Persaud and Wayne Lee, both former employees of GWE, falsely identified themselves as representatives of GWE in order to defraud the hotel into releasing GWE's proprietary and confidential information. Defendants Persaud and Lee appropriated the confidential materials of GWE without its consent.

## V.
## CAUSES OF ACTION

**COUNT ONE –Breach of Contract Against the Individual Defendants**

34. GWBS incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

35. Ancillary to and in exchange for receipt of confidential information, the Individual Defendants, and each of them, entered into a valid and binding agreement regarding the disclosure and use of GWBS' proprietary and confidential information.  Certain provisions within that agreement require each Defendant to return such confidential and proprietary material to GWBS upon their departure and to not use such information and to not compete with GWBS for any of the clients that any of the named Defendants had while

with GWBS.  The purpose of these covenants was and is to protect GWBS' considerable investment in the acquisition of the business goodwill of its customers and clients, the training and enhancements of the skills of its employees, and its employees' acquisition of confidential and proprietary information belonging to GWBS.

36. Defendants' conduct, including but not limited to, competing against GWBS as employees of PBS, taking and retaining documents and other information belonging to GWBS post-employment, calling on and soliciting clients for PBS that Defendants called on and solicited for GWBS, using and disclosing GWBS' confidential and proprietary information for PBS' and Defendants' own benefit, and as otherwise stated herein above constitutes material breaches that have caused substantial damage to GWBS.  GWBS has suffered irreparable harm as a direct result of the breaches set forth herein.  GWBS is entitled to recover from Defendants, and each of them, its actual damages suffered as a result of Defendants' breaches.  As a result of those breaches, it was necessary for GWBS to retain legal counsel to enforce the respective Agreements.

37. Therefore, GWBS seeks to recover from Defendants, and each of them, actual damages, attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001, costs, and any and all of the rights and remedies to which GWBS may be entitled pursuant to any previous IC they have signed while an IC with GWBS, and pursuant to the Texas Civil Practice & Remedies Code.  In connection with Defendants' violations of his/her promises to not compete, which were ancillary to or part of otherwise enforceable agreements in accordance with Tex. Bus. & Comm. Code § 15.50, the underlying Agreements' limitations are reasonable and do not impose a greater restraint than is necessary to protect GWBS' investments, including its goodwill and confidential and proprietary information.

Nonetheless, to the extent it is determined by the Court that any of the Agreements' limitations are overbroad, GWBS requests that the limitations at issue be reformed in accordance with Tex. Bus. & Comm. Code § 15.50 to the least extent possible.

**COUNT TWO—Breach of Fiduciary Duty Against Individual Defendants**

38. GWBS incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

39. Pursuant to their respective agreements, Individual Defendants owed and continue to owe a fiduciary duty to GWBS to preserve the confidentiality of GWBS' proprietary information, including but not limited to its marketing and advertising strategies and business leads. This duty of confidentiality survives the conclusion of Defendants' respective agreements with GWBS. Defendants violated and continue to violate their respective duties of confidentiality by using and disclosing GWBS' confidential information in a manner that is adverse to GWBS. Defendants' use and disclosure of GWBS' confidential and proprietary information was done for the benefit of Defendants and each of them and to the detriment of GWBS, and without GWBS' consent.

40. Defendants' above-described conduct constitutes breaches of those fiduciary duties.

41. As a result of Defendants' breaches of those fiduciary duties, Plaintiff has suffered money damages, including but not limited to, loss or impairment of investments in the goodwill of its customers and confidential proprietary information and profits from customers who have become or will become customers of Defendants and/or PBS. GWBS has suffered direct harm as a result of the breaches and will continue to suffer harm unless Defendants are ordered by the Court to honor their respective duties and

specifically perform their contractual obligations.   Defendants' conduct was willful, intentional, wanton and egregious.   These actions demonstrate a high degree of moral turpitude justifying the imposition of exemplary or punitive damages in an amount to be determined at trial.

## COUNT THREE—Tortious Interference Against Individual Defendants and PBS

42. GWBS incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

43. GWBS has a legitimate business relationship with, and reasonable expectancy of prospective economic advantage from its customers and potential clients.

44. Defendants, and each of them, were and are fully aware of the above business relationships and expectancy as a result of their business relationships with GWBS. Defendants intentionally and maliciously interfered, without justification or authorization, with GWBS' existing contractual and ongoing business relationships with its customers.

45. Defendants' tortiuous interference with GWBS' contractual and prospective business relations has directly and proximately caused harm and damages to GWBS in excess of the minimum jurisdictional limits of the Court, including but not limited to, loss or impairment of investments in the goodwill of its customers and confidential proprietary information and profits from customers who have become or will become customers of Defendants and/or PBS.

46. Defendants' above-described actions were and are willful, wanton, and malicious, additionally entitling GWBS to the recovery of punitive damages from Defendants.

## COUNT FOUR—Misappropriation Against Individual Defendants and PBS

47. GWBS incorporates by reference each of the foregoing paragraphs as if fully set

forth herein.

48. Defendants have misappropriated the confidential and proprietary information of GWBS in violation of the terms of the Agreements, their common law duties, and GWBS' contractual and common law rights.

49. Defendants' misappropriation has caused and continues to cause harm and damages to GWBS in excess of the minimum jurisdictional limits of the Court, including but not limited to, loss or impairment of investments in the goodwill of its customers and confidential proprietary information and profits from customers who have become or will become customers of Defendants and/or PBS.

50. Defendants' conduct was willful, intentional, wanton and egregious. These actions demonstrate a high degree of moral turpitude justifying the imposition of exemplary or punitive damages in an amount to be determined at trial.

**COUNT FIVE –Texas Theft Liability Act Against Individual Defendants**

51. GWBS incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

52. Defendants' acts as alleged herein constitute a violation of the Texas Theft Liability Act, Chapter 134 of the Texas Civil Practice and Remedies Code, and each of them is liable for the damages suffered by GWBS as a result of the unlawful theft.

53. Pursuant to that statute, GWBS is entitled to recover its damages, court costs, and attorneys' fees from Defendants.

**COUNT SIX –Unfair Competition Against Individual Defendants and PBS**

54. GWBS incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

55. Defendants have engaged and continue to engage in unfair competition by misappropriating the confidential and proprietary information of GWBS in violation of the terms of their respective Agreements, their common law duties, and GWBS' rights, and by using this information to solicit GWBS' clients and unfairly compete against GWBS. Defendants further engaged in unfair competition by using GWBS' confidential information to gain or attempt to gain new business for PBS, a direct competitor of GWBS.

56. Defendants' unfair competition has caused and continues to cause harm and damage to GWBS in excess of the minimum jurisdictional limits of the Court, including, but not limited to, loss or impairment of investments in the goodwill of its customers and confidential proprietary information and profits from customers who have become or will become customers of Defendants and/or PBS.

57. Defendants' conduct was willful, intentional, wanton and egregious. These actions demonstrate a high degree of moral turpitude justifying the imposition of exemplary or punitive damages in an amount to be determined at trial.

**COUNT SEVEN --Violation Of The Racketeer Influenced And Corrupt Organization Act By Individual Defendants**

58. The foregoing paragraphs are incorporated herein by reference for all purposes.

59. Defendants and each of them are a "person" within the meaning of 18 U.S.C. §§ 1961(3);

60. Defendants are an enterprise whose activities affect interstate commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). Defendants are "associated with" Plaintiffs within the meaning of 18 U.S.C. § 1962(c). Defendants, Meier, McCray, Granger, Kiser, Lee, Jacobs, Rodda, and Persaud are associated with Plaintiffs by virtue of their former independent contractor relationship with Plaintiffs.

61. Defendants, Meier, McCray, Granger, Kiser, Lee, Jacobs, Rodda, and Persaud have engaged in "racketeering activities" within the meaning of 18 U.S.C. § 1961(1) because their activities, as demonstrated by the facts set out in Paragraphs 1 through 60 above, involve: fraudulent use of the mails and wires in the conduct of their business, management and operations. This conduct constitutes mail fraud within the meaning of 18 U.S.C. § 1341, and wire fraud within the meaning of 18 U.S.C. § 1343.

62. Defendants racketeering activities constitute a "pattern of racketeering activities" within the meaning of 18 U.S.C. § 1961(5) because their acts have continuity and relationship expressly directed to the purpose of continuously and repeatedly defrauding businesses engaged in interstate commerce through the use of mail fraud, and wire fraud. Specifically, as is set out further above, wire fraud and mail fraud have become, and continue to be, the regular way of carrying out business. And, Persaud is currently under investigation by the Houston Police Department for felony theft of Plaintiff GWE's intellectual property.

63. As demonstrated by Paragraph 1 through 62 above, Defendants conducted and participated, both directly and indirectly, in the conduct of the Plaintiff's affairs through a pattern of racketeering activities within the meaning of, and in violation of, 18 U.S.C. § 1962(c).

64. As a direct and proximate result of such conduct, Plaintiffs have suffered, and continue to suffer, injuries to its business and property, within the meaning of 18 U.S.C. § 1964.

65. Based on Defendants racketeering activities, GWBS is entitled, under 18 U.S.C §

1964(c), to recover threefold its damages, the costs of this action, plus reasonable attorneys' fees.

**Temporary Restraining Order**

66. GWBS incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

67. As illustrated above, Plaintiffs will suffer immediate and irreparable injury if the Defendants are not immediately restrained from the acts described below, for which Plaintiffs have no adequate remedy at law.

68. Based on the foregoing, GWBS has shown a substantial likelihood of recovery on the merits and has demonstrated that it has no adequate remedy at law.   Unless these Defendants are immediately restrained and enjoined from taking the acts proscribed below, GWBS will continue to suffer clear, immediate and irreparable injury by Defendants' acts before a hearing is had on GWBS' application for a temporary injunction; and further, that if the commission of the foregoing acts is not restrained immediately and if Defendants are not enjoined from the acts proscribed below, GWBS will suffer irreparable injury, including but not limited to, immediate and imminent loss of business opportunities, clients, profits, and the disclosure of its confidential and proprietary information which cannot be in all cases readily ascertainable and therefore susceptible to recovery of money damages, for which there is no adequate remedy at law.

69. GWBS has suffered and will continue to suffer irreparable harm from the conduct of Defendants.  As a direct and proximate cause of Defendants' conduct, GWBS has lost and will continue to lose its investments in the goodwill of its customers, and confidential and proprietary information.

70. The harm and loss will continue unless this Court restrains and ultimately permanently enjoins the conduct of Defendants. GWBS is therefore entitled to and hereby requests a temporary restraining order, temporary and permanent injunctive relief enjoining Defendants from taking any action inconsistent with the duties and other obligations owed to GWBS.

71. The threatened harm to Plaintiffs outweighs the harm a temporary restraining order would inflict on Defendants.

72. Issuance of a temporary restraining order is in the public interest of protecting confidential, proprietary and trade secret information in the marketplace.

73. Plaintiff is willing to post bond in the amount the Court deems appropriate.

74. The Court should enter this temporary restraining order without notice to the Defendants because Defendants continue in their efforts to steal Plaintiff's confidential and proprietary information and Plaintiffs will suffer immediate and irreparable injury if the TRO is not granted before the opposing party can be heard. Furthermore, based on the foregoing statements regarding Defendants' actions, there is a substantial risk that Defendants would destroy or conceal evidence if notice is given.

75. For these reasons, Plaintiff's ask the Court issue a temporary restraining order preventing Defendants from the actions described below and set the request for a preliminary injunction hearing at the earliest possible time.

**Preliminary Injunction**

76. GWBS incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

77. Plaintiffs will suffer irreparable injury if the Defendants are not enjoined during the

**PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT AND APPLICATION**          **Page 17 of 21**
**FOR INJUNCTIVE RELIEF, INCLUDING A TEMPORARY RESTRAINING ORDER**

pendency of this lawsuit from the acts described below.

78. Based on the foregoing information, there is a substantial likelihood that Plaintiff's will prevail on the merits, especially in light of Defendants' continuous pattern of conduct.

79. Issuance of a preliminary injunction is in the public interest of protecting confidential, proprietary and trade secret information in the marketplace.

80. Plaintiff is willing to continue the bond set by the court for the TRO.

81. Plaintiff asks the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the application, issue a preliminary injunction against Defendants.

**Permanent Injunction**

82. Plaintiffs ask the Court to set its application for injunctive relief for a full trial on the issues in this application and, after the trail, to issue a permanent injunction against Defendants.

## VI.
## PRAYER FOR RELIEF

83. For the foregoing reasons, GWBS respectfully prays that Defendants, and each of them, be served with process and be required to answer herein, and that the Court grant a temporary restraining order without notice and then upon hearing enter a temporary injunction and final permanent injunction, and also enter final judgment in GWBS' favor, and against Defendants, and each of them, on all causes of action, and for the following relief, in the alternative:

      (A)    Actual damages, in the maximum amount allowed by law;

      (B)    Exemplary damages, in the maximum amount allowed by law;

      (C)    Prejudgment interest, at the highest rate allowed by law;

(D)     Post-judgment interest, at the highest rate allowed by law;

(E)     Costs of Court;

(F)     Reasonable attorneys' fees and costs incurred by GWBS in pursuit and defense of this action pursuant to Tex. Civ. Prac. & Rem. Code §§ 37.009, 38.001, and Tex. Bus. & Comm. Code § 15.51;

(G)     A temporary restraining order and temporary and permanent injunction enjoining Defendants from:

(1)     Competing against GWBS as prohibited by their respective Agreements;

(2)     Tortiously interfering with GWBS' contractual and prospective business relations with its clients and customers;

(3)     Misappropriating, using, disclosing, or relying on GWBS' confidential and proprietary information, including, but not limited to, customer lists, customer account data, customer preferences, sales techniques, pricing, and pricing strategy;

(4)     Soliciting GWBS' clients, if Defendants called on or solicited the same clients or customers or otherwise became acquainted with them during Defendants' business relationship with GWBS;

(I)     A tolling of any periods of time under the Agreements that have lapsed for the period of time that the Agreements have been breached; and

(J)     Such other and further relief to which GWBS may be entitled at law, or in equity.

Respectfully submitted,

MCCREARY & STOCKFORD, L.P.
18383 Preston Road, Suite 150
Dallas, Texas  75252-5476
214.297.0800 (Telephone)
214.297.0801 (Facsimile)


David S. McCreary
Texas Bar No. 00789477
Cory S. Hartsfield
Texas Bar No. 24038943


ATTORNEYS FOR PLAINTIFFS
GREAT WESTERN BUSINESS
SERVICES, LLC, GW EQUITY AND
GWBS, INC.

## VERIFICATION

BEFORE ME, the undersigned Notary authority, personally appeared Gene Sartin, of Great Western Business Services, Inc., who being by me duly sworn on oath deposed and stated that Great Western Business Services, Inc. is the Applicant in the above-entitled and numbered cause; that he has read the above Plaintiff's Verified Original Petition and Application for Injunctive Relief, Including a Temporary Restraining Order, and that every statement of fact contained within Section V and Count Four of Section VI in this Petition is within his personal knowledge and is true and correct.

GREAT WESTERN BUSINESS SERVICES, INC.

By: _____

Its: _____

SUBSCRIBED AND SWORN TO BEFORE ME, on the _____ day of _____, 2005, to certify which witness my hand and official seal.

DEBRA D. SUMMERS
Notary Public
STATE OF TEXAS
Commission Expires 08/05/07

_____
Notary Public in and for the State of Texas

Debra D. Summers
Printed Name

My Commission Expires:

8/5/07

# GWBS L.L.C. Independent Contractor Agreement

This Independent Contractor Agreement ("Agreement") is made and entered into this ____ day of _____, 20___ by and between Great Western Business Services, L.L.C. of Delaware ("GWBS") and the undersigned Independent Contractor ("IC").

## I. Recitals

GWBS prepares business valuations and advertises businesses that are for sale or are seeking investment capital. GWBS wishes to retain IC and IC wishes to be retained by GWBS for the purpose of soliciting and selling GWBS' advertising and valuation services in accordance with the terms of this Agreement.

## II. Agreement

NOW, THEREFORE, for and in consideration of the mutual promises and covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, GWBS and IC agree as follows:

1. Definitions:  For the purposes of this Agreement, the following terms have the meaning set forth below.

    a   "Product(s)" means:

        1.  a GWBS prepared or procured valuation of a business which may include an opinion with respect to the fair market value of the business; and

        2.  a GWBS-prepared advertisement appearing in various publications and other print, non-print, and electronic media, which publicizes in a generic, non-categorical manner, as GWBS deems appropriate, that a business or businesses are for sale or are seeking investment capital.

    b.  "Approved Contract(s)" means:

        1.  The For Sale By Owner Advertising Agreement;

        2.  The Business Valuation Agreement;

        3.  The Venture Capital Advertising; and

        4.  The Franchisor Advertising Agreement

        in the forms that are being provided to IC contemporaneously with this Agreement (including any future amendments or modifications to same).  Copies of said "Approved Contracts" are attached hereto as Exhibits 1-4.

    c.  "Deposit" means: the funds collected by the IC from the Client at the time the Client executes an Approved Contract, as provided in the Approved Contracts.

    d.  "Customer" or "Client" means: a business that is for sale or is seeking to raise capital or desires an evaluation of its business, and has, through its authorized director, officer, partner, owner, agent or representative solicited the products or services of GWBS.

    e.  "Sales Services" means: the efforts and communications made to a Customer or potential Customer in order to convey and communicate the benefits of GWBS' products and services, including, but not limited to all sales oriented customer contact prior to, during, and after the execution of an Approved Contract.  "Sales Services" also include all activities ancillary and relating to Customer contact including the recruitment, training, and supervision of Sub-Contractors who are responsible for providing "Sales Services" on behalf of GWBS.

    f.   "Sub-Contractor" means: any entity engaged by the IC, whether as employee or IC, to act on behalf of the IC in fulfilling its obligations under this Agreement.

    g.  "Competition" means:

        1.  Soliciting or contacting businesses for the purpose of and with the intent to sell Products or Services substantially similar to those offered by GWBS to any such business in IC's Sales Region;



2. Selling or attempting to sell Products [as defined in Section 1(a)] or Services substantially similar to those offered by GWBS in the IC's Sales Region;

3. Providing Sales Services on behalf of GWBS under a name or organization other than GWBS; or

4. The use of GWBS' confidential information for any purpose other than providing Sales Services herein.

h. "IC's Sales Region" means and is limited to an area consisting of a 200-mile radius surrounding any and all addresses of Customers who have executed Approved Contracts (as those addresses appear on those Approved Contracts) as a result of IC's performance under this Agreement and, in addition, an area consisting of a 200-mile radius surrounding GWBS' address as it appears in this Agreement.

i. "Leads" shall constitute the name(s) or identity of prospective Customers of GWBS regardless of the origination of said lead.

j. "Marketing Materials" includes any information that utilizes the name, likeness, products, or services of GWBS either directly, or indirectly, and that is intended to be disseminated to the public.

k. "Approved Marketing Materials" includes those marketing materials that have been approved in writing by 1) an officer of GWBS or 2) legal counsel to GWBS prior to the time of its dissemination to the public.

l. "Training Materials" includes any information that utilizes the name, likeness, products, or services of GWBS either directly, or indirectly, and that is intended to be disseminated to trainees to educate said trainees in the characteristics, benefits, markets, competition, and operation of GWBS.

m. "Approved Training Materials" includes those training materials that have been approved in writing by 1) an officer of GWBS or 2) legal counsel to GWBS prior to the time of its dissemination to said trainees.

<u>Undertaking</u>: IC shall be granted a non-exclusive right to provide GWBS with Sales Services.  In undertaking to perform such Sales Services under this Agreement, IC shall devote its full time, energy and skill on a regular and consistent basis and apply such time and personnel as IC deems necessary to effectively design and implement a business valuation and advertising sales program.  As part of the services to be rendered by IC under this Agreement, IC shall contact in person or by telephone, officers, directors, partners, owners, agents or representatives, as the case may be, of businesses that wish to advertise their business for sale in an effort to sell GWBS' Products by having the business execute Approved Contract(s).

Upon the execution of an Approved Contract by a Customer, IC shall collect from the Customer the Deposit. The Deposit shall be made payable by Customer to GWBS and shall be by check, money order, credit card, or wire transfer, in the amount specified in the Approved Contract(s).

<u>Remitter of Approved Contract and Proceeds</u>:  If IC, or any of its Sub-Contractors, agents, employees, or representatives, receives or collects the executed Approved Contract and any funds representing all or any portion of any payment or other fee due to GWBS from a Customer, including, without limitation, the Deposit, then IC shall, within five (5) days of receipt of same, forward said funds directly to GWBS.

<u>Interest on Past Due Amounts</u>:  Any and all sums due by IC to GWBS under this Agreement shall bear interest at a per annum interest rate equal to the lesser of 10% per annum or the maximum rate allowed by law from the date due until paid.

<u>Acceptance of Customer</u>:  GWBS reserves the right to refuse any business not deemed acceptable by GWBS in its sole and absolute discretion and in such event, all fees paid by such Customer shall be immediately reimbursed. GWBS may refuse to accept the Approved Contract that has been otherwise executed by the Customer.  In such event, no fees or commissions shall be deemed earned by IC as a result thereof.

<u>Independent Contractor</u>: IC is and shall at all times act as an independent contractor.  Except as expressly agreed herein, the parties hereto acknowledge that GWBS does not have the authority, and this Agreement does not grant GWBS the right to direct or control the activities, hours of labor, or manner of performance of Sales Services by IC. IC acknowledges that it is not and never has been a joint venture, partner, or employee of GWBS. In connection with its undertakings hereunder, IC may, in its discretion enter into agreements with Sub-Contractors. The number of such Sub-Contractors and their respective responsibilities, and any payments to such Sub-Contractors (whether salaried, commissioned, or otherwise), shall be in the discretion of, and shall be the sole responsibility of, IC. IC acknowledges and agrees that any and all costs and expenses incurred by IC in hiring such Sub-Contractors, including but not limited to salaries, benefits, workers' compensation or other insurance, payroll taxes and any other cost and expense

of any kind or character shall be the sole and exclusive liability and responsibility of IC, and IC hereby agrees to indemnify and hold harmless GWBS from any such liability or responsibility. Neither IC nor any of its Sub-Contractors or representatives shall obligate, bind, or contract on behalf of GWBS in any manner without GWBS' specific prior written consent, nor shall IC or any of its Sub-Contractors or representatives hold itself out to any third party as being authorized to do so. IC and any of its Sub-Contractors are not authorized to enter into any contracts or agreements of any kind or character on behalf of GWBS under this Agreement.

Use of GWBS Materials: In providing Sales Services to GWBS' customers, IC is authorized to use only GWBS' "approved marketing materials" and "approved training materials." Other than "approved marketing materials" and "approved training materials," IC is expressly forbidden to use the name, likeness, logo, or to otherwise communicate, either directly, or indirectly, any information about GWBS' products, services, or any other intellectual property of any kind owned, authored, or otherwise controlled by GWBS. IC further agrees that with regard to any dissemination, communication, or representation of any kind to the public that relates either directly or indirectly to GWBS' products, services, or to the Sales Services to be provided to GWBS by IC, that IC shall make any and all such disseminations, communications, or representations only as provided in this Agreement and only in the express written name of IC and no other entity or organization whether affiliated with IC or not. IC further agrees not to use the name "Great Western" or "GWBS" in isolation or in any other method or manner that is likely to cause confusion in the marketplace between the identity and purpose of GWBS and the identity and purpose of IC. IC understands that use of unauthorized materials is grounds for immediate termination of this Agreement.

Commissions:   For performance under this Agreement, IC shall be entitled to a commission as follows:

a.   In return for Sales Services provided by IC under this Agreement, GWBS agrees to pay ten percent (10%) of the Deposit on all Approved Contracts.

b.   In consideration for its obligations under the Confidentiality provision of this Agreement, GWBS agrees to pay IC an additional seven and one half percent (7.5%) of the Deposit on all Approved Contracts.

c.   In consideration for its obligations under the Non-Competition provision of this Agreement, GWBS agrees to pay IC an additional seven and one half percent (7.5%) of the Deposit on all Approved Contracts.

d.   Total Commission: The total commission amount payable to IC for Sales Services, Confidentiality, and Non-Competition shall be twenty five percent (25%) of the Deposit on all Approved Contracts. IC may also be eligible for additional compensation from GWBS based upon performance criteria established by GWBS in its normal course of business.

e.   Bonus Commission: IC shall be eligible to receive up to ten percent (10%) of the amount of any satisfaction payment (commonly referred to as "back end fee") as bonus commission under criteria established by GWBS in its normal course of business

Total Commission shall be paid on all Approved Contracts that are received by GWBS from the IC and that are accepted and executed by GWBS. Such payment shall be made by GWBS to the IC within a reasonable time after the Deposit is received by GWBS and after GWBS verifies that IC has fulfilled all obligations under this Agreement, GWBS accepts and approves the Client, and GWBS executes the Approved Contract(s).

Refunds/Charge backs:   Refunds shall be due and payable from IC to GWBS as follows:

a.   If any check or form of payment representing all or any portion of any payment or fee due to GWBS under an Approved Contract from any Customer is not collected by GWBS for any reason whatsoever, then IC shall reimburse GWBS for any commissions or fees paid by GWBS to IC based on such uncollected fee.

b.   In the event that a refund is issued to any Customer under an Approved Contract and the basis of said refund is the direct or indirect result of any act, omission, or failure arising out of the rendition of Sales Services by IC or its Sub-Contractors, IC shall reimburse GWBS for any commissions or fees paid by GWBS to IC for the transaction underlying the refund.

c.   IC expressly authorizes GWBS to withhold from the payment of commissions otherwise due and owing under this Agreement, the value of any reimbursement due to GWBS from IC.

Confidentiality:

a.   IC acknowledges that during the term of this Agreement, it will have access to and become familiar with certain confidential information and trade secrets of GWBS, including, without limitation, customer lists, sales information, sales presentations, training materials, formulas, patterns, devices, processes, records,

specifications, leads, and other compilations of information which are owned by GWBS and which are regularly used in the operation of the business of GWBS.

b.    IC specifically agrees, as a covenant separate and apart from any other covenant or promise contained herein and supported by separate consideration as provided herein, that IC, its Sub-Contractors, agents, owners, employees, or representatives shall not disclose any of the aforesaid confidential information or trade secrets, either directly or indirectly, nor will it use them in any way, either during the term of this Agreement or at any time thereafter, except as required in the course of performing Sales Services under this Agreement.

c.    IC acknowledges and agrees that all such confidential information and trade secrets constitute the sole and exclusive property of GWBS.  All of the aforementioned confidential information and trade secrets and any and all of the files, records, documents, drawings, specifications, materials, customer lists, data, or leads used in the promotion or sale of any product or service offered by GWBS or any Sales Services·rendered by IC, whether prepared by IC, Sub-Contractor, or GWBS, or otherwise coming into the possession of IC or any Sub-Contractor, shall remain the exclusive property of GWBS and shall be immediately returned to GWBS upon the termination of this Agreement.

d.    To further protect and enforce the Confidentiality Section of this Agreement, IC covenants and agrees to obtain and execute valid and binding Confidentiality Agreements between IC and any of its Sub-Contractors, agents, owners, employees, or representatives and with GWBS as the intended third party beneficiary of said Agreements.    The consideration paid by IC to its Sub-Contractors, agents, owners, employees, or representatives shall be in a sufficient amount to render said Agreement as enforceable.

e.    If any provision of this Confidentiality Agreement shall be held to be contrary to law or invalid or unenforceable in any respect in any jurisdiction, or as to any one or more periods of time, region, scope, or business activities, the remaining provisions shall not be affected but shall remain in full force and effect as to the other remaining provisions, and any such invalid or unenforceable provisions shall be deemed, without further action on the part of the parties hereto, modified, amended, limited, and reformed to the extent necessary to render the same valid and enforceable.    In addition, should any court of competent jurisdiction determine that any portion of this Confidentiality Agreement is void or unenforceable for any reason whatsoever, than IC shall, upon seven (7) days written notice, reimburse GWBS for the entire 7.5% commission previously paid by GWBS to IC as consideration for this Confidentiality Agreement.

f.    If IC violates any term or provision of this Section, then IC acknowledges and understands that the such a violation shall subject IC to immediate legal action, including but not limited to suit for temporary restraining order, temporary injunction, permanent injunction, damages, attorneys' fees and any and all of the rights and remedies to which GWBS may be entitled. IC expressly agrees to toll the statute of limitations under this confidentiality provision until four (4) years from the date GWBS discovers or should have discovered a breach of this Confidentiality Agreement.

Non-Competition:

a.    IC specifically agrees, as a covenant separate and apart from any other covenant or promise contained herein and supported by separate consideration equaling an additional seven and one half percent (7.5%) commission as provided herein, that during the term of this Agreement and for a period of twenty four (24) months, beginning on the date this Agreement terminates, that IC, its Sub-Contractors, agents, owners, employees, or representatives, will not, directly or indirectly, either through any form of ownership, or as an agent, advisor, consultant, employee, independent contractor, partner, lender, or in any other capacity, either for its own benefit or for the benefit of any other person, firm, corporation or other entity, without the prior written consent of GWBS, solicit or contact any lead, customer, or former customer of GWBS for the purpose of and with the intent to engage in Competition against GWBS. IC, its Sub-Contractors, agents, owners, employees, and representatives hereby covenant and agree that, during the term of this Agreement and for a period of twenty-four (24) months beginning on the date this Agreement terminates, it will not directly or indirectly, either through any form of ownership (other than ownership of securities of a publicly held corporation which IC owns less than five percent (5%) of any class of outstanding securities), or as an agent, advisor, consultant, employee, independent contractor, partner, lender, or in any other capacity, either for its own benefit or for the benefit of any other person, firm, corporation, or other entity, without the prior written consent of the Company, engage in Competition against GWBS.

b.    To further protect and enforce the Non-Competition Section of this Agreement, IC covenants and agrees to obtain and execute valid and binding Non-Competition Agreements between IC and any of its Sub-Contractors, agents, owners, employees, or representatives and with GWBS as the intended third party beneficiary of said Agreements with consideration adequate to support said agreements.

c. If any provision of this Non-Competition Agreement shall be held to be contrary to law or unenforceable in any respect in any jurisdiction, or as to any one or more periods of time, region, scope, or business activities, the remaining provisions shall not be affected but shall remain in full force and effect as to the other remaining provisions, and any such invalid or unenforceable provisions shall be deemed, without further action on the part of the parties hereto, modified, amended, limited, and reformed to the extent necessary to render the same valid and enforceable. In addition, should any court of competent jurisdiction determine that any portion of this Non-Competition Agreement is void or unenforceable for any reason whatsoever, than IC shall, upon seven (7) days written notice, reimburse GWBS for the entire 7.5% commission previously paid by GWBS to IC under this Agreement.

d. If IC violates any term or provision of this Non-Competition Agreement, then IC acknowledges and understands that the same shall subject IC to immediate legal action, including but not limited to suit for temporary restraining order, temporary injunction, permanent injunction, damages, attorneys' fees and any and all of the rights and remedies to which GWBS may be entitled. IC expressly agrees to toll the statute of limitations under this non-competition provision until four (4) years from the date GWBS discovers or should have discovered a breach of this provision.

Leads:

a. IC shall, from time to time, be provided with leads from GWBS. IC expressly acknowledges that all leads are the sole and exclusive property of GWBS, that IC has no ownership interest of any kind in such lead, and that all such leads constitute proprietary and confidential information of GWBS subject to the Confidentiality provision of this Agreement.

b. IC expressly acknowledges that GWBS is the sole and exclusive source of leads for IC and that in providing Sales Services for GWBS under this agreement, IC, its Sub-Contractors, owners, agents, employees, and representatives are prohibited from obtaining and developing Customer leads either internally or from external sources without first obtaining advance written consent from an officer of GWBS. In the event such consent is granted to IC, all such leads shall be turned over to GWBS immediately and shall not be acted upon or distributed to any Sub-Contractor or third party unless and until an officer of GWBS approves said distribution.

c IC shall, from time to time, be provided the names of prospective clients ("leads") by GWBS. IC shall either pay GWBS $100.00 for each lead provided by GWBS or shall return said lead to GWBS, properly coded in accordance with GWBS' procedure manual within thirty (30) days. In the event IC fails to pay $100.00 fee for each lead or fails to return each lead properly coded to GWBS within (30) days, GWBS may file a Form 1099 with the Internal Revenue Service and report the value of all leads provided by GWBS and not paid for by IC. IC expressly acknowledges that all leads are the sole and exclusive property of GWBS and that all leads constitute proprietary and confidential information of GWBS in which IC has no ownership interest whatsoever

Pricing: GWBS reserves the right to change the rates and pricing structure charged by GWBS for its services under Approved Contracts, from time to time, without prior notice to IC. In addition, GWBS retains the right to propose to increase or decrease all commissions to be paid or payable by GWBS pursuant to this Agreement. Any such proposal shall be made in writing to IC by a notice sent to the address set forth below by certified mail, return receipt requested, and accepted by IC or IC's authorized representative(s). Such proposal shall be deemed to be accepted by IC and shall constitute an amendment to this Agreement if IC does not send notice to GWBS terminating this Agreement as required by this Agreement within ten (10) days of receipt of said notice of proposed change in commissions.

Indemnity: IC, its Sub-Contractors, agents, representatives, employees, independent contractors, successors, assigns, heirs, administrators, executors and personal representatives hereby agree to indemnify, hold harmless and defend GWBS, its shareholders, officers, directors, agents, successors, assigns, and legal representatives of and from any and all claims, demands, liabilities, judgments, costs (including attorneys' fees), or suits of any kind or character resulting from or arising out of, whether directly or indirectly, this Agreement, the performance by IC or Sub-Contractor of the Services, including any theft, negligence, or misrepresentations or any other act or omission of said parties whether on behalf of GWBS or not and whether authorized or unauthorized. In addition to any an all other indemnities provided hereunder, IC is fully liable for, and agrees to pay to GWBS and indemnify GWBS against, any losses of GWBS resulting from failure of IC or any of its Sub-Contractors to timely pay and turn over to GWBS any and all amounts due and owing to GWBS, including, without limitation, all Deposits collected by IC or any of its Sub-Contractors.

Termination: This Agreement shall remain in full force and effect until same is terminated as hereinafter provided. Either party hereto may terminate this Agreement for any reason or for no reason whatsoever upon ten (10) days written notice to the other party. Upon termination, GWBS shall pay IC any and all commissions due and owing on all Deposits collected by IC, less any offsets, credits, or refunds due to GWBS. Upon termination, IC agrees that it will only be paid commissions on any Deposits that have been collected and deposited by GWBS as of the date of

---

termination. In addition the right to receive any additional compensation, awards, incentive trips, bonuses (including bonuses on satisfaction payments/back end fees) shall terminate immediately as of the date of termination.

In addition, IC shall be automatically terminated for violation of any one of the following covenants:

I.     IC shall not speculate or communicate to a client or prospective client as to the length of time it will take for a business to sell or procure an investor.

II.    IC shall not communicate or imply the quantity of buyers or investors in GWBS database for a particular type of business or any other business.

III.   IC shall not indicate to a client how many similar or related businesses have been in GWBS' database or their past results.

IV.    IC shall not state that any business valuation prepared or procured by GWBS is a certified audit.

V.     IC shall not influence the Client in any way regarding the "Asking Price" of "The Business."

VI.    IC shall not submit any order without the required paperwork.

VII.   IC shall not imply that any commissions are paid to GWBS or the IC upon the sale of the business or upon obtaining investment capital.

VIII.  IC shall not communicate that GWBS performs function other than the services described in the For Sale By Owner Advertising Agreement, Valuation Agreement, or Venture Capital Advertising Agreement.

IX.    IC shall not release the names of any existing or past clients unless expressly authorized by both client and GWBS.

X.     IC shall not violate any other policy, procedure or amendment thereto that relates specifically to IC's duties and obligations under this Agreement.

Dispute Resolution:  IC unequivocally consents and agrees that venue and jurisdiction over and aspect of the Agreement shall be in Dallas County, Texas. In addition, both GWBS and IC agree that any controversy or claim arising out of or relating to this contract, or the breach thereof, is subject to arbitration under the Federal Arbitration Act and shall be settled by binding arbitration to be conducted in Dallas, Texas and administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The costs of any arbitration shall be borne equally by the parties. A willful violation of this provision or any breach of this Agreement by Owner shall entitle GWBS to specific performance of this Agreement, to recover actual damages, to recover liquidated damages as stated herein and to receive reimbursement for GWBS' expenses and attorneys' fees incurred in securing enforcement herein.

Insurance:  IC agrees at its sole cost and expense to obtain such policies of public liability insurance, fire and extended coverage insurance, worker's compensation insurance and such other forms of insurance as IC shall deem appropriate and in such limits as GWBS shall have the right to approve to fully insure IC, its Sub-Contractors, agents, servants, and employees from any of the insurable perils as described in said policies. Copies of any policies of insurance to be obtained by IC hereunder shall be furnished to GWBS not later than thirty (30) days from the date of execution of this Agreement.

Notices:  All notice, offers, request, instructions, acceptance, consents, approvals and other communication required or authorized to be given by either party to the other under this Agreement shall be in writing, shall be addressed as indicated below, and shall be deemed to be received, whether actually received or not when deposited in the U.S. mail, postage prepaid, via registered or certified mail, return receipt requested, addressed to GWBS and IC as the case may be, as set forth below such parties' signatures hereto or at such other address as the parties may from time to time specify in writing.

No Assignment:  The rights and duties of IC under this Agreement are personal and may not be assigned or delegated without prior written consent of GWBS, which consent may be withheld in the Company's sole and absolute discretion.

No Agency:  IC is not authorized to extend any warranty or guarantee or to make representations or claims with respect to GWBS' services without express written authorization from GWBS.

No other Legal Relationship:  This Agreement shall not create a partnership, joint venture, agency, employer-employee or similar relationship between GWBS and IC. IC shall not be considered a partner with GWBS and shall not be entitled to participate in any plan, arrangement or distribution by GWBS pertaining to or in connection with any pension, stock, bonus, profit sharing or other benefit extended to GWBS' employees.

Injunctive Relief: IC understands that any violation of this Agreement by IC, its Sub-Contractors or representatives will cause GWBS immediate and irreparable harm which money damages cannot adequately remedy. Therefore, upon any actual or impending violation of this Agreement, IC, its Sub-Contractors and representatives consent to the issuance of a restraining order, preliminary and/or permanent injunction, without bond, restraining or enjoining such

violation by IC, its Sub-Contractors, or representatives. IC understands that such orders are additional to and do not limit the availability to GWBS of any other remedy.

Damages Waiver: In the event of a dispute in arbitration or litigation, GWBS and IC hereby waive, to the fullest extent permitted by law, any right to or claim of punitive or exemplary damages against the other and may recover only actual damages, attorneys' fees and liquidated damages as stated herein.

Liquidated Damages: In the event of a breach by IC of its obligations to provide Sales Services, its duties under the Confidentiality and Non-Competition Agreements or any other breach of this Agreement, it is hereby agreed that GWBS will incur certain damages, lost profits, and costs that are not readily ascertainable. Therefore, in the event of such a breach, IC shall pay to GWBS the liquidated damages as follows:

a.      For breach of its general obligations under this Agreement to provide Sales Services as defined herein, IC shall reimburse GWBS for the dollar for dollar value of GWBS' actual damages plus any fees, expenses, and costs incurred by GWBS in securing performance under this Agreement.

b.      For breach of its Confidentiality Agreement as defined herein, IC shall refund to GWBS all of the previous 7.5% commissions paid to IC for the Confidentiality Covenant from the date of execution of this contract until the date that GWBS first discovers the breach. In addition, IC shall be required to reimburse GWBS for any fees, expenses, and costs incurred by GWBS in securing performance under this Agreement.

c.      For breach of its Non-Competition Agreement as defined herein, IC shall refund to GWBS all of the previous 7.5% commissions paid to IC for the Non-Competition Covenant from the date of execution of this contract until the date that GWBS first discovers the breach. In addition, IC shall be required to reimburse GWBS for any fees, expenses, and costs incurred by GWBS in securing performance under this Agreement.

d.      GWBS and IC agree that the amounts established by this Paragraph as liquidated damages are reasonable under the circumstances existing at the time of the execution of this Agreement and that payment of said sum by IC shall exclude IC from any further liability under this Agreement.

Waiver: Any failure by GWBS to enforce and require the strict keeping and performance of any of the terms and conditions of this Agreement shall not constitute a waiver of any such terms and conditions at any future time and shall not prevent GWBS from insisting on the strict keeping and performance of such terms and conditions at any later time.

Modifications to be in writing: This Agreement shall not be modified or rescinded except by written instrument signed by authorized representative of both parties hereto.

Copies of Agreement: This Agreement may be executed in two or more counterparts, each constitute one and the same instrument.

Governing Law. The Terms and Conditions of this Agreement shall be construed pursuant to and in accordance with the laws of the state of Texas and all of the covenants and obligations hereunder are fully enforceable and performable in the City of Dallas, Dallas County, Texas.

Venue: IC irrevocably consents and hereby agrees that any lawsuit relating to any matter arising under this Agreement shall be initiated in a State or Federal Court in the City of Dallas, Dallas County, Northern District of Texas, State of Texas, United States of America.

Jurisdiction: IC irrevocably consents to the jurisdiction and to the service of process, pleading, and notices in connection with any and all actions and processes initiated in a State or Federal court located in the City of Dallas, Dallas County, Northern District of Texas, State of Texas, United States of America.

Binding Effect and Benefit. This Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto and their respective successors and assigns in the event that said party is a corporation or said parties' respective heirs, executors, successors, assigns, and personal representatives in the event said party is an individual.

Authority. Each party hereto represents and warrants to the other that the individual signing this document below has the full authority to bind the entity for which said individual is signing to the terms and conditions hereof and that this Agreement and the performance of the terms, conditions, and covenants hereof is fully authorized by and binding upon said entity.

Partial Invalidity: In the event that any term or provision of this Agreement shall be deemed by a court of competent jurisdiction to be overly broad in scope, duration or area of applicability, such court shall have the power, and is

hereby directed, to limit such scope, duration or area of applicability, or all of them, so that such term or provision is not overly broad, and to enforce the same as so limited. Subject to the foregoing sentence, in the event any provision of this Agreement shall be held invalid or unenforceable for any reason, such invalidity or unenforceability shall attach only to such provision and shall not affect or render invalid any other provision of this Agreement.  It is hereby declared the intention of the parties that they would have executed the remaining portion of this Agreement without including any such part, parts, or portion, which may, for any reason, be hereafter declared invalid.

<u>Entire Agreement Amendment.</u>  This Agreement supersedes any and all other agreements, either oral or written with respect to the subject matter hereof and contains all of the covenants and agreements between the parties with respect to said matters. Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not embodied herein, and that no other agreement, statement or promise not contained in this Agreement shall be valid or binding. No change, modification, amendment, addition, or deletion to this Agreement shall be valid unless in writing and signed by or on behalf of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and made effective of the day and year first above written and IC acknowledges he/she has read, understands, and agrees to be bound by each and every term of this Agreement.

| Independent Contractor, Individually | SS # | Phone # |
|---|---|---|
| Address | City | State    Zip |
| Corporation Name* | Tax ID # | E-mail address |

ACCEPTED BY:

_____
Authorized Representative, GWBS, L.L.C.

*If IC has signed on behalf of a corporation or partnership, he/she acknowledges and agrees that he/she has also signed and agreed to be bound individually as a person.

&JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

3-05CV0.800-R

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

GW Equity LLC, GWBS, Inc. and Great Western Business Services, LLC

**DEFENDANTS**

PBS Global, Inc. f/k/a Prudential Business Services Inc., John Persaud, Richard Meier, Lahny McCray, Dale Granger, Joseph C. Kiser, Wayne Lee,

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

McCreary & Stockford, L.P., 18333 Preston Road, Ste 150, Dallas, Tx 75252; 214-291-0800

Attorneys (If Known)

Cory S. Hartsfield, David S. McCreary and Brad E. Stockford

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U S Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

RECEIVED
APR 2 2 2005
DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl Ret Inc Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | | | |

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- **Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U S Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**)

Brief description of cause: Breach of Contract, Racketeer Influenced and Corrupt Organizations and Theft of Trade Secrets

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F R C P 23

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)

JUDGE _____   DOCKET NUMBER _____

DATE
4.22.05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____